UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PABLO GABRIEL RODRIGUEZ,
et al.,

      Plaintiffs,

v.                            CASE NO. 3:23-cv-388-WWB-JBT

VALLE ELITE REMODELING
SERVICES, LLC, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Default Judgement Pursuant to Federal Rule of Civil Procedure 55 ("Motion") (Doc. 41). For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED**, that final default judgments be entered in favor of Plaintiffs and against Defendants jointly and severally, and that Plaintiffs be directed to file a motion on entitlement to attorney's fees and expenses within fourteen days after entry of judgment in accordance with Local Rule 7.01(b).

### I. Background

Plaintiffs bring the instant action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., against Defendants Valle Elite Remodeling Services, LLC ("Valle Elite"), Sandra L. Blandon Moreno ("Moreno"), and Richard Valle ("Valle"). (Doc. 29.) Due to several deficiencies, the

undersigned previously denied without prejudice Plaintiff's [sic] Motion for Default Judgment (Doc. 24) and provided Plaintiffs with the "opportunity to file a second amended complaint, re-serve it under Federal Rule of Civil Procedure 4, and again move for defaults and a default judgment, if appropriate." (Doc. 28 at 1.)

On January 24, 2024, Plaintiffs filed their Second Amended Complaint at Law ("SAC") (Doc. 29). On March 21, 2024, Plaintiffs filed a Second Motion for Clerk's Default against Defendants (Doc. 37), and defaults were entered against all three Defendants on March 25, 2024 (Docs. 38–40). Plaintiffs now seek entry of default judgments against all three Defendants. (Doc. 41.)

**II. Standard**

Before the Court enters a default judgment in a case, a number of requirements must be met. A plaintiff must show, by affidavit or otherwise, defendant's failure to plead or otherwise defend a lawsuit, and a default must have been entered. Fed. R. Civ. P. 55(a). After entry of the default, the plaintiff must apply to the Court for a default judgment, except in limited circumstances when application may be made to the clerk. Fed. R. Civ. P. 55(b). The Court must ensure that it has subject matter jurisdiction over the claims and that the well-pled factual allegations of the complaint, which are deemed admitted upon entry of default, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205–06 (5th Cir. 1975).

2

Federal Rule of Civil Procedure 8 requires that a complaint contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Thus, in ruling on a motion for final default judgment, the Court must determine whether a sufficient factual basis exists in the complaint for a judgment to be entered. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.

Finally, when a plaintiff seeks the entry of a default judgment against an individual defendant, the plaintiff must show that such defendant is neither a minor nor an incompetent person, *see* Fed. R. Civ. P. 55(b)(1), and must comply with Section 521 of the Servicemembers Civil Relief Act ("SCRA"), which requires, *inter alia*, the filing of an affidavit by the plaintiff:

> (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or

>   (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. App'x § 521(b)(1).

### III. Analysis

Upon review of the SAC, the Motion, and other relevant filings, the undersigned recommends that default judgments be entered against all Defendants. The Court has federal question jurisdiction over the claims pursuant to 28 U.S.C. § 1331. Additionally, Plaintiffs have established that Defendants were properly served, the individual Defendants are not minors or incompetent, and defaults have been entered against all three Defendants. (Docs. 34–36; Doc. 29 at 2; Docs. 38–40.) Plaintiffs also submitted an affidavit in compliance with the SCRA, which states that Moreno and Valle are not in the military. (Doc. 24 at 29–30.)[1] Furthermore, as discussed below, the SAC adequately states a claim for which relief may be granted. The undersigned will address Counts I (Rodriguez's FLSA claim) and II (Fernandez's FLSA claim) collectively.

To prevail on a claim for payment of unpaid overtime wages under the FLSA, Plaintiffs must establish the following:

>   First: [Plaintiff] was an employee of [Defendant] and was engaged in commerce or in the production of goods for

---

[1] The Affidavit as to Military Service (Doc. 41-1) filed with the Motion is unsigned. However, Plaintiff's attorney previously filed a signed affidavit attesting that the individual Defendants are not in the military. (Doc. 24 at 29–30.)

4

>commerce [or] employed by an enterprise engaged in commerce or in the production of goods for commerce; and
>
>Second: [Defendant] failed to pay [Plaintiff] the minimum wage [and/or] overtime pay required by law.

*See* Eleventh Circuit Pattern Jury Instructions (Civil Cases) 4.14 (2022).

### A. Plaintiffs Sufficiently Allege Employment by All Defendants

The SAC sufficiently alleges that Plaintiffs were employed by all three Defendants. Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and the term "employ" "includes to suffer or permit to work," 29 U.S.C. § 203(g). The SAC contains the following allegations regarding the employer-employee relationship between Plaintiffs and Defendants:

>6. Defendant [Moreno] is the Owner and Manager of Valle Elite. . . .
>
>7. Defendant Valle is the Manager of Valle Elite and was Plaintiffs['] supervisor. . . .
>
>8. Defendants Blandon and Valle Defendants are not minors or incompetent persons; and in relevant times to this Complaint, they were in charge of Valle Elite employees; including Plaintiffs.
>
>. . .

5

12. Valle Elite is an "employer" as that term is defined in Section 203 of the FLSA, because it is a privately owned for-profit entity.

13. [Moreno] and Valle are "employers" as that term is defined in Section 203 of the FLSA, because: (1) they were Plaintiff's head "boss" at Valle Elite; (2) they had the power to hire and fire the employees, including Plaintiff[s]; (3) they supervised and controlled Plaintiff[s'] work schedules and conditions of employment; (4) they determined the rate and method of payment for employees; and (5) they maintained employment records.

. . .

17. Rodriguez began working at Defendants in or before September 19, 2021 and was terminated in May 20, 2022.

18. At all times, [Rodriguez] held the same position with Defendants where he was a general laborer. [Rodriguez] was an "employee" of Defendants as that term is used in Section 203 of the FLSA because he was employed by Defendants to perform remodeling and construction duties, electrical work, painting and carpentry, and they do not fall into any of the exceptions or exemptions for workers under the FLSA.

. . .

32. Fernandez began working at Defendants in or before November 2021 and was terminated on November 15, 2022.

33. At all times, [Fernandez] held the same position with Defendants where he was a handyman and general laborer. [Fernandez] was an "employee" of Defendants as that term is used in Section 203 of the FLSA because he was employed by Defendants to perform remodeling

> and construction duties, painting and carpentry, and they do not fall into any of the exceptions or exemptions for workers under the FLSA.

(Doc. 29 at 4–5, 8.) The undersigned recommends that these allegations are sufficient to establish that an employer-employee relationship existed between Plaintiffs and all three Defendants.

### B. Plaintiffs Sufficiently Allege Enterprise Coverage

With respect to coverage under the FLSA, Plaintiffs must establish either (1) "individual coverage," meaning that the employee was "engaged in commerce or in the production of goods for commerce," or (2) "enterprise coverage," meaning that the employee was "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265–66 (11th Cir. 2006).

Regarding enterprise coverage, an "[e]nterprise engaged in commerce or in the production of goods for commerce" is defined as an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

*Id.* § 203(s)(1).

The Regulations further explain that:

> An enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if . . . it regularly and recurrently has at least two or more employees engaged in such activities. On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238.

The undersigned recommends that Plaintiffs have sufficiently alleged enterprise coverage. The SAC contains the following allegations relating to enterprise coverage:

> 5. The relevant time period for this lawsuit was September 2021 through November 2022 when Plaintiffs were employed by Defendants, and at all times during this time frame Defendant had at least four to five employees, which were hired to work regularly and recurrently in the remodeling business engaged in interstate commerce.
>
> . . .
>
> 9. Defendants are "an enterprise engaged in commerce or in the production of goods for commerce" under 29 USC § 203(s)(1)(A)(i) and are liable under the FLSA under the enterprise coverage because:
>
> > i) they have annual gross volume of sales made or business done of at least $500,000 based on the following facts:

8

      a. Defendants' business specializes in construction contracting services in Florida, Tennessee and Mississippi; and they handle multiple projects simultaneously.

      b. Plaintiffs were hired to work in one house remodeling job of kitchen and bathroom, completed in one week where the company charged around $45,000. On another project, on information and belief, the company generated $600,000 for a job completed over a few months.

      c. Defendants employed at least 5 full-time employees and many other temporary workers. Based on the estimated payroll and the projects worked, the annual revenue must be more than $500,000.

ii) because Defendants have employees, including Plaintiffs, handling, selling, or otherwise working on goods or materials that have travelled in interstate commerce and/or been moved in or produced for commerce by any person, including but not limited to:

      a. Raw materials involved in construction, remodeling and carpentry, that were manufactured outside the state of Florida and traveled in interstate commerce; and

      b. Handled goods, including construction tools from brands like Bosch, Makita and DeWalt, wood, electrical products and other materials manufactured outside the state of Florida and traveled in interstate commerce.

. . .

19. While working for Defendants, [Rodriguez] was required to travel to work in Tennessee, Mississippi and other states besides Florida.

9

> 20. Defendants required [Rodriguez] to use imported tools that were manufactured outside the state of Florida and bought in commerce.
>
> . . .
>
> 34. [Fernandez] was daily required by Defendants to work with imported tools that were bought in commerce.

(Doc. 29 at 2–4.)

The undersigned recommends that Plaintiffs' allegations regarding Defendants' annual gross volume of business, number of employees, regular employee handling of goods and materials that traveled interstate, and construction projects in multiple states, as described in the paragraphs above, are sufficient to state plausible claims for enterprise coverage under the FLSA.

### C. Plaintiffs Sufficiently Allege that Defendants Failed to Pay Them Overtime Wages

The undersigned also recommends that Plaintiffs adequately allege that Defendants failed to pay them overtime wages as required by the FLSA. Specifically, the SAC alleges the follow regarding overtimes wages:

> 21. Although schedules are subject to change, [Rodriguez's] general schedule with Defendants required [Rodriguez] to work on average 84 hours per week.
>
> . . .
>
> 26. Defendants did not pay [Rodriguez] the one and a half (1.5) times the regular rate at which he was employed during the hours worked in excess of forty (40) hours per week.

10

> 27. On information and belief, Defendants have failed to keep proper time records tracking [Rodriguez'] time worked; and Defendants' failure and refusal to pay [Rodriguez] overtime wages for hours worked in excess of forty (40) hours per week was a willful violation of the FLSA.
>
> . . .
>
> 35. Although schedules are subject to change, [Fernandez's] general schedule with Defendants required [Fernandez] to work on average 72 hours per week.
>
> . . .
>
> 40. Defendants did not pay [Fernandez] the one and a half (1.5) times the regular rate at which he was employed during the hours worked in excess of forty (40) hours per week.
>
> 41. On information and belief, Defendants have failed to keep proper time records tracking [Fernandez's] time worked; and Defendants' failure and refusal to pay [Fernandez] overtime wages for hours worked in excess of forty (40) hours per week was a willful violation of the FLSA.

(Doc. 29 at 5–6, 8–9.) The undersigned recommends that these allegations are sufficient to establish that Defendants failed to pay overtime wages as required by law.

### D. Damages

Regarding damages, "a judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one

11

capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam);[2] *see also SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). Further, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Campbell v. Bennett*, 47 F.4th 1362 (11th Cir. 2022). The undersigned recommends that an evidentiary hearing on the issue of damages is not necessary in this case because the record contains sufficient information to mathematically calculate damages.

It is an employee's burden to prove, "with definite and certain evidence, that he performed work for which he was not properly compensated." *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *implicitly overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34 (1988). "Inaccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation," and if "the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a 'sufficient basis' for damages." *Id.*

> In such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12

> inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 1352.

Plaintiffs allege that Defendants willfully violated the FLSA by failing "to keep proper time records tracking Plaintiffs' time worked." (Doc. 29 at 6, 9.) Moreover, Defendants have presented no time records showing the number of hours worked by Plaintiffs because they have defaulted. (Docs. 38–40). Therefore, the undersigned recommends that Plaintiffs' Affidavits (Doc. 41-1; Doc. 41-2) regarding the number of hours worked, and other amounts due, is "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*

Rodriquez's Affidavit provides that he is owed $12,870.00 in unpaid overtime compensation; $12,870.00 in liquidated damages; $1,088.00 in unpaid wages for his last week of work; and $4,915.00 in withheld wages "allegedly for Taxes, but the amount was not reported to the Internal Revenue Service (["]IRS["])." (Doc. 41-1 at 3–6; Doc. 29 at 7.) Fernandez's Affidavit provides that he is owed $18,144.00 in unpaid overtime compensation; $18,144.00 in liquidated damages; $1,500 as reimbursement for "work tools that were retained after [he] was

13

terminated";[3] and $6,000.00 in withheld wages for taxes that were not reported to the IRS.  (Doc. 41-2 at 3–6; Doc. 29 at 9–10.)

Under the FLSA, "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216."  29 U.S.C. § 260.  "Even if the district court determines that the employer's actions were taken in good faith and based on reasonable grounds, the district court still retains the discretion to award liquidated damages."  *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999).  In the present case, the undersigned recommends that an award of liquidated damages in an amount equal to the amount of compensatory damages for both Plaintiffs is appropriate. Defendants have made no showing of good faith or reasonable grounds. Moreover, the SAC alleges that Plaintiffs worked greatly in excess of forty hours per week, that Defendants failed to keep any time records, and that Defendants acted willfully.  (Doc. 29 at 1, 6, 9.)

---

[3] Expenses are due to be reimbursed to the employee if the expense is "primarily for the benefit of the employer."  *See Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1237 (11th Cir. 2002).  Since the tools were retained by Defendants, they were presumably "for the benefit of the employer."  *Id.*  Therefore, reimbursement of Fernandez's expenses is appropriate.

14

Accordingly, the undersigned recommends that Rodriguez be awarded a total of $31,743.00 for unpaid overtime compensation, liquidated damages, unpaid wages for his last week of work, and wages withheld purportedly for taxes. The undersigned recommends that Fernandez be awarded a total of $43,788.00 for unpaid overtime compensation, liquidated damages, reimbursement for tools, and wages withheld purportedly for taxes.

### E. Attorney's Fees and Expenses

In the Motion, Plaintiffs also request entitlement to attorney's fees and expenses. (Doc. 41 at 17.) The FLSA authorizes the court to award reasonable attorney's fees and expenses to a prevailing plaintiff. 29 U.S.C. § 216(b). While the Motion acknowledges Local Rule 7.01's bifurcated procedure, the Motion fails to comply with Local Rule 7.01(b), which states that "[w]ithin fourteen days after entry of judgment, the party claiming fees and expenses must request a determination of entitlement in a motion that . . . 2) states the amount sought or provides a fair estimate of the amount sought . . . ." M.D. Fla. R. 7.01(b). Accordingly, the undersigned recommends that the Court direct Plaintiffs to file a motion for entitlement within fourteen days after entry of judgment in accordance with Local Rule 7.01(b).

15

### IV.    Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Motion (**Doc. 41**) be **GRANTED**.

2.     The Clerk of Court be directed to enter judgment in favor of Plaintiff Paolo Gabriel Rodriguez against all three Defendants, Valle Elite Remodeling Services, LLC, Sandra L. Blandon Moreno, and Richard Valle, jointly and severally, in the amount of $31,743.00.

3.     The Clerk of Court be directed to enter judgment in favor of Plaintiff Cesar Fabian Fernandez against all three Defendants, Valle Elite Remodeling Services, LLC, Sandra L. Blandon Moreno, and Richard Valle, jointly and severally, in the amount of $43,788.00.

4.     Plaintiffs be directed to file a motion for entitlement to attorney's fees and expenses within fourteen days after entry of judgment in accordance with Local Rule 7.01(b).

### Notice To Parties

"Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed

findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**DONE AND ORDERED** in Jacksonville, Florida, on May 15, 2024.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Wendy W. Berger
United States District Judge

Counsel of Record